Good morning, Mr. Secretary. I'm Mark Levine of the Office of the State Appellate Defender, representing Gordon Vanderark, who is appealing his conviction on several counts of solicitation for murder. There are two issues here. First is whether the statements that Mr. Vanderark made should have been suppressed. And second, whether the DuPage County State's attorney should have been disqualified from prosecuting the case and an independent prosecutor appointed. The standard of review is our starting point on this first issue. The facts found by the trial judge are the facts of this appeal. His findings, Judge McAllister's findings, are not contrary to the manifest weight of the evidence. Judge McAllister found as a fact that the state's attorney's office deceived the court, Judge Creswell, in its application for a writ to bring Mr. Vanderark to DuPage County to be interrogated by the state's attorney's investigator. So what? So what if they did? Was there a constitutional right that was violated? Yes. Tell me about it. You're absolutely right. This is absolutely the heart of this whole appeal. Our whole court system, the whole theory of courts in America, of criminal prosecution in this country and in England, is that it's an adversarial, accusatorial system. It's not inquisitorial as they do in Europe. And which system might be better is not anything that we need to even worry about because we do it this way. And when those roles get muddled, the right to due process under the system as it has been set up for centuries over here is denied. Now you might ask, how is the, Mr. Vanderark, or how is a defendant hurt by this? But I have to say, we have to say, that if this system is not set up for the benefit of a person being prosecuted for a crime, then who is it set up for? Who could possibly be the intended beneficiary of this system? This system of keeping judges independent and neutral and having prosecutors prosecute. When the prosecutor muddles those roles by making false statements to a judge and crossing a very, very bright line. In a couple of months, it will be 40 years since I began practicing law, and in all the states where I've practiced, this has been one of the brightest of bright lines, that a lawyer does not deliberately misinform a judge in order to get something that he wants in litigation. Well, wasn't this like an administrative procedure? We're going to bring him up here, we're going to tell him about his forfeiture, judge, and then maybe we're going to question him. If it's an administrative matter, how is it a constitutional violation, and what case law do you have to support the fact that his constitutional rights were violated? Your Honor has asked a couple of different questions. Let me try to answer both of them. The first one, whether he was brought up here to inform him about the forfeiture of his vehicle, that's what the state's attorney said on the application for a writ. And that's what Judge Bacalus found was false. In fact, the case, he was never informed about that, even though they talked to him for, the state's attorney's investigator talked to him for a few hours. He never said anything about this. The case was never called. It was not on the calendar for this purpose. There had never been a motion filed for this. His attorney had not been notified to be in court, or at least, or if he had, the state has never mentioned that in any of these proceedings. It was simply false. He was not being brought here for that purpose. He was being brought here to interrogate him. And what's wrong with that? And of course they could have interrogated him. A person can steal $100 or he can earn $100. Either way, he's got $100. But the law cares very much how they went about it. And here, the statements that he made during that interrogation were the direct fruits. They were inculpatory, weren't they? I'm sorry? I mean, what the statements that he made were, I gave him money to buy watercolors. Well, that's what the state argues in its brief. But Judge Bacallus found that he did make incriminating. In his memorandum of opinion, which is appended to Mr. Van Der Rohe's brief, he says that he did make incriminating statements. What statements were incriminating? He said he agreed that he talked to this Myers fellow. That he talked to him at length, that he gave him money. He said that. He had an explanation for it. But he confirmed the basic, I believe he confirmed that he made a promissory note. He gave him money. All these things he affirmed. For watercolors. Well, that's what he said. But who's likely to believe that? And that's why it's incriminating. I guess my question to you would be, he made the promissory note for $70,000. And the man testified, or would testify, he made the promissory note for $70,000. So he really didn't say anything that they didn't already have evidence of. What did he say that admitted or had made any admission that he was involved in this plot to have these people killed? Two things. Well, first of all, the prosecutor at the trial thought that this would be persuasive. He played the whole, I think he played the whole two and a half hours of the videotape for the jury. Now, did he, do I actually remember that he played the whole two and a half hours? I have to say right now I can't remember and I don't want to misinform the court. But he certainly, I think he did. And he certainly played some of it. So the prosecutor thought that this would be persuasive to the judge. Or to the jury, rather. And it confirmed Mr. Myers' testimony. Myers was the state's main witness. And what he said, what Van Der Ark said, and furthermore, what he said confirmed it. Furthermore, his manner and his apparent deception, Van Der Ark's apparent deception in the tape was itself. If he had said, yes, I said all of that to him, but I didn't mean it. I was just really, really angry at my wife and angry at the judge. And I didn't mean any of that stuff. That wouldn't have been incriminating. Because that was his defense at trial. I didn't mean any of this stuff. Maybe he didn't. I don't know. But what made it incriminating, really, was his coming up with these goofball explanations for it that nobody in the world is going to believe. That's really what made it most incriminating, and that's probably. Is your position, then, that any time a defendant makes a statement that stretches credibility, it's incriminating? Well, Judge McAllis found that his statement was incriminating. And I think probably the strongest showing that it's incriminating was the prosecutor's use of the whole thing at trial. He thought it was incriminating. That's why he used it. He wouldn't have wasted all this time for the jury if he didn't think it was incriminating. Well, it certainly boxes the defendant. It certainly does. It certainly does. Now, let me ask you this. Suppression, when you're looking at the whole area of confessions and so forth, suppression usually results from conduct which overbears the defendant's will and which makes a statement. Forget the Miranda issue about not complying with Miranda. But when you're talking about involuntary statements and so forth, you're usually talking about something that really overbears the defendant's will. Here, the defendant could have been questioned in Springfield, could have been questioned at the prison he was in, could have been questioned in Wheaton, he could have been questioned anywhere. Certainly could. Location is not that important. Right. What overbears his will here? That's one species of suppression. Suppression is a judicially created remedy to deter misconduct by the state in prosecuting people accused of crimes. That's usually Fourth Amendment, though. It usually is. But what I'm saying is that suppression doesn't have any constitutional basis in itself. It's a remedy to deter conduct that is very bad. And always suppression is going to exclude probative evidence. Otherwise, what's the point? And there's a social cost to excluding probative evidence. So in order to apply suppression, it has to be something very important that we want to deter. Now, usually in the courts what we're seeing is just what Your Honor just said, overbearing the will of the defendant. But that's not the kind of misconduct that we have in this case. Nevertheless, suppression is a remedy because the conduct that needs to be deterred deliberately lying to the court in order to get him present to be interrogated. Now, as I said, certainly they could have interrogated him somewhere else. Certainly they could have interrogated him in a lawful manner. But the state's attorney's office chose not to. Don't the police do that all the time? They interrogate. Do what? Use trickery. Certainly. Is that wrong? Using trickery to the defendant or to the person who was accused is not, that's well established that the police can do that.  They deceived the court. Now, in the Graylord cases, there are cases saying that they can deceive the court when the judge himself or herself is the suspect. The judge is just another suspect and those normal rules apply. But here Judge Creswell was not a suspect. She was not a threat to Harold Myers. She hadn't done anything wrong. She was acting properly as a judge, ruling on the facts that were being brought to her, being represented to her as true by a representative of the people, the state's attorney's office. So the state's attorney's, the way I read the record is the defendant is brought up because the writ says he's going to be told about his forfeiture. Right. And he's going to be questioned. Right. And so what happens is they take him in the door of the courtroom as opposed to taking him through jail. And they come through the door of the courtroom and who's sitting on the bench but Judge Faywell who was threatened or whose life was threatened. And that wasn't just happenstance. The writ said he was to be brought before Judge Faywell. Okay. Judge Faywell didn't know anything about this apparently. So Judge Faywell sees him and she's like, she gets on the bench. She sees him and he's on the bench. Right. So then at that point they take him to the jail. They take, right. They take him, I'm not sure where they took him, but they took him and interrogated him at that point. At that point. Okay. So you're saying that this was kind of set up this way that they knew all along that they were never going to tell him about the forfeiture. They just said that to get Judge Presswell to issue the writ. That is what Judge Bacalus found as a fact, yes. And unless it's contrary to the manifest way of the evidence, which it's not, that's the fact that we have to work with in this appeal. Well, what about Judge Presswell's affidavit where she says that the state told her that the detectives wanted to speak to the defendant about a murder for hire investigation while he was there, being brought there for the issue of the vehicle? Well, while he was there, maybe he also would have lunch and he would do various other things. That's fine. Of course, they can interrogate him if he was there properly. Well, he could have been brought there for parking tickets. He could have been brought there for anything. Could he have been brought there for the purpose of interrogation? No. He was brought there for the purpose of hearing in a proceeding that Judge Bacalus found. There wasn't any such proceeding. I understand that. It was finished. But what if the writ said defendant is going to be brought to court for the purpose or brought to Wheaton for the purpose of interrogation? Well, then I wouldn't be making this argument. My whole argument is he was brought there by deceiving the court. Do you think the Department of Corrections would have honored a writ, just bring him up so we can talk to him? I really have no idea. Certainly, they could have gone down there to talk to him. Would it have been wrong to issue a writ for the purpose of questioning or speaking to the defendant? Would that have been wrong? And if so, where is the case law that says that's wrong? Well, I'm not saying that's wrong. The state is relying upon Harris and Judge Bacalus. Back up for just a second. Talk about Harris if I could. This is the era of law that brings us here today. Judge Bacalus found that what the state did was wrong, but Judge Bacalus found that he was precluded from suppressing the evidence because of this Harris case. Because it wasn't an appropriate consequence. It was not a consequence of violating the Habeas Corpus Act. But here, there wasn't any violation of the Habeas Corpus Act. We don't need a remedy for violating the Habeas Corpus Act. The remedy for that is a $300 fine. We're not even talking about that. The remedy here is for something quite different from that. You want to wrap up real quickly? Okay. And when we come back on rebuttal, we'll talk about the state's attorney's conflict. Okay. If you remember, okay? Thank you. Thank you. May it please the court. Counsel. Good morning, Your Honors. My name is Ray Posenko. I'm the Assistant State's Attorney at the DuPage County State's Attorney's Office. I'm arguing on behalf of the people. And if I could just make two quick points before I get into the meat of this argument, which I'm sure Your Honors are anxious to get to. Number one, as you just indicated, Justice Shostak, opposing counsel didn't get to his special prosecutor argument. He didn't get to it in his reply brief. I brought up a case directly on point from Your Honors, People v. Morley. It's a 1997 case that says just because a crime victim is an employee at the state's attorney's office, there's no need to appoint a special prosecutor. It's precisely on point. It controls. There's really nothing to say about it. And how do you distinguish People v. Walter Lange? Lange was not an employee of the state's attorney's office, I believe. He was, I think, driving on a revoked license. Right. In that case, the prosecutor actually participated in the initial prosecution of the events. He went out and witnessed the event. He was a witness. He was a prosecutor up until the very trial. So I distinguish that way in my brief, and I believe that still stands. Morley controls. Defendant hasn't said anything about Morley in his reply brief. I assume he agrees with controls. In the second issue, you also raised, when talking to opposing counsel, Justice Shostak, I made a harmless error argument in my brief that even constitutional error, which if by some stretch of imagination this is determined to be some sort of constitutional error, it can still be harmless if it's harmless beyond a reasonable doubt. And we admitted two or three trials worth of evidence against this fellow. We had the proposed contract killer. We had overhears of the two discussing the plan to kill Justice Fayewell, ASA Anderson, defendant's ex-wife, his partner attorney, and all their families. We had plenty of evidence against this guy. This confession didn't really add anything to the mix. So defendant also does not reply to that argument in his reply brief. So, again, I assume he's conceded that any error that might have occurred here was harmless, which brings us to the central issue raised by defendant. And there's no better way to say this. No one lied to Judge Creswell. I understand Judge McAllis made some findings in his memorandum of opinion in which he challenged the veracity of some of the statements made by us during the suppression hearing. But no one lied to Judge Creswell. There would be absolutely no upshot for us to do that. The problem Judge McAllis faced was his idea that somehow if Judge Creswell knew that the forfeiture had reached a final judgment, perhaps, and she also knew that we intended to question about the murder for hire scheme, that somehow that would have implicated her in some sort of wrongdoing. There's no case law for that. As Your Honor, Justice Shostak, you pointed out, this is an administrative proceeding. We presented Justice Creswell with a valid writ, a writ to have the defendant brought back to tell him his vehicle had been forfeited, the forfeiture had been accomplished by default judgment. Was the defendant questioning or asking questions or writing letters about that forfeiture of that car? The evidence before Your Honors is slim on that point, and this is why. We at the suppression hearing testified that in over years we had heard a defendant questioning the status of his vehicle, and these were jail calls he was making while in Centralia to his power of attorney, to his friends. I've written these letters about my vehicle, and no one's responding to them. I don't know what happened to my vehicle. So after Judge Buchalos's memorandum of opinion where he takes us to task for not being completely forthcoming is what he said, he never said we lied to her. You know, that's a creation of Mr. Levine's. We asked to reopen the proofs on the suppression hearing to clarify that, and Judge Buchalos unequivocally denied us. And he had also denied the defense attorney's request to reopen proofs to ask more about Judge Kressel's affidavit. The affidavit's sparse. We didn't create it. It was created by, you know, and neither party had any input in the affidavit. Judge Buchalos procured this affidavit, and it's obvious from the record, a reasonable interpretation on the record that Judge Buchalos believed he had distanced Judge Kressel from this action for some reason. We don't know why, but that's obvious. And in his argument, the defendant says again and again, Judge Buchalos's findings are not against the manifest way of evidence. We disagree. The evidence is clear. The affidavit of Judge Kressel and our testimony at the suppression hearing are consistent. Judge Kressel knew both that the writ was being issued for the, to tell the defendant about the forfeiture of his vehicle. But is the point that that's not what the writ says on its face, though? What does the writ say on its face? For status of return of vehicle. And? He learned zero about his vehicle, correct? Yeah, the writ says nothing about the vehicle. Regardless of what you told Judge Kressel, Judge Buchalos looked at the face of the writ and found that it was a false writ. Actually, I think I might disagree with you on that point, Your Honor, because what Judge Buchalos said when we asked for the open proofs is that when asked about how he knew, how we knew that defendant had questioned the vehicle, we mentioned the over here. But then Judge Kressel says letters. And that is the juxtaposing, the competing things that troubled Judge Buchalos. That we said over heres and Judge Kressel said letters. And he comes right out and says A.S.A. Diamond didn't say anything about letters in his testimony. Like, you know, the idea that there are letters versus reference to letters and over heres, that's really a distinction without a difference. The bottom line is, and no one questions, no one's questioned this, we knew he had asked about the status of his vehicle. And that was a valid purpose to bring him up. Well, now, was it a valid purpose to bring him up? If you look at the habeas statute, it says that the court may enter an order to bring a prisoner before the court to testify, to be surrendered and discharged of bail, for trial upon any criminal charge lawfully pending in the same court, or to testify in a criminal proceeding in another state. The car segment of this is not part of a criminal charge. It is a civil, if anything, it's a civil forfeiture. Right? I think it's done differently in county to county. In some cases there is an M.R. or a different civil court number issued for the forfeiture part. But it's part and parcel to the criminal charge being levied. And to Your Honor's question about the language in the statute, it says to testify, but courts have interpreted that to also attend court proceedings, not just to testify. Freed says that specifically at page 328, ill at third, at 467. What does it say there again? Oh, the case list. People be freed, it's cited in the briefs. 328, ill at third, at 467. To attend criminal proceedings. And that was, these writs are issued time and time again post-judgment. His criminal proceeding is over. Your Honor, you're right. And these, as I was about to say, these writs are issued time and time again for convictions that have already entered. For post-conviction or 214-1 or even something as innocuous as status of restitution or status of return of property that was held in evidence. You know, post-judgment writs are issued all the time. And if you, but I'm not sure that's what the defendant is contesting here. His whole argument hinges on this faulty fact that we lied to Judge Creswell. We did not lie to Judge Creswell. Her affidavit is 100% consistent with our suppression testimony. The fact that he wasn't brought then before the court, was it your position that there was a security breach of some sort? That's precisely right, Your Honor. We did not, we did exercise some ineptitude in the carrying out of this writ. We should have told Judge Faywell that he was coming to court. Because she's caught unaware by him walking in through the front doors of her courtroom. I mean, we couldn't predict that that's what DOC would do. You know, normally the defendants are brought through the side door and there's some announcement, you know, some, she would have had some formal notice before she's presented with them in open court. You know, so ideally we would have mentioned to Judge Faywell that this was going to happen, but we didn't. So when she's presented with a defendant who has just tried to hire someone to kill her, she leaves the bench. I mean, that's understandable. And she doesn't come back, so ultimately we take him from the courtroom. But there's no disputing that our intention was to call him before Judge Faywell and tell him that his car had been forfeited. Why wouldn't you have put the writ before Judge Creswell, who issued the writ, when you knew there would be a conflict with Faywell? You mean to call him back? To tell him about the forfeiture. Why wouldn't the writ have him appear before Creswell? I suppose we could have done that, too, Your Honor. I can't think of anything that would have prevented us from doing that. But again, you know, ineptitude is something different from lying to a judge. That just did not happen here. And the defendant continues to gloss over the fact that we had an extremely valid reason for what we did. We had people to protect. We had this informant in Centralia that we were told was in danger if we involved Centralia DOC personnel in this process. That if a solicitation for murder for hire investigation had been aired to Centralia personnel, that information, unfortunately, would have gotten out to the population at the prison. And our fellow would have been in danger. Mr. Levine still hasn't said anything about that. Still hasn't acknowledged that. And that fact cannot be forgotten. The Harris case makes a point of saying if there are special considerations at play for technical violation of the habeas corpus statute, those reasons should be accounted for. I said that on my brief, and that's in the Harris opinion. There are no further questions? Anyone? Well, when I look at this Moran versus Burbine case, which has been cited by the defendant, the language he uses is that confessions procured by means, and this is the quote, revolting to the sense of justice, end of quote, cannot be used to secure conviction. Do you think it rose to that level? Definitely not. Definitely not. And on that point, Your Honor, the defendant has raised the Graylord operation, cases involving that. And in those cases, completely false cases were put into the judicial system by the FBI in order to try to adopt judicial corruption. And that was done with the full knowledge of the chief judge of Cook County, who did absolutely nothing to stop it. And when those Graylord defendants came into court and said, well, this was some fraud on the judicial system that they were using the judicial process to help indict me and convict me, court after court after court, they all said this, including the cases cited by the defendant. Defendants don't have standing to champion the integrity of the judicial system. You know, regardless of any right the defendant has or has not, they don't have that right. They have no standing to contest the integrity of the judicial system. And that's precisely what defendants trying to do here. If there are no further questions, we would ask Your Honor to affirm the decision of the court below. Thank you. Do you want to sort of address the representation of the DuPage County State's Attorney's Office? Which one? The issue of the conflict with respect to the prosecutor. Do you want to address that? Well, to address it very briefly. The Assistant State's Attorney, Ms. Anderson, had been, she said, there for 14 years. She'd been an intern in the office when she was in law school. She testified that she daily worked with the prosecutors who actually did stand up and prosecute the case. She testified at sentencing that she was very, very upset by this. Who wouldn't be? So this is not just someone who happens to be employed by the State's Attorney's Office. This is a senior attorney in the State's Attorney's Office who was a victim, alleged victim, a victim of a murder for hire plot. Well, you know, you're probably never going to get or very rarely going to get a traffic or misdemeanor prosecutor's life threatened. So most of these cases, when you have a prosecutor's life threatened, are going to end up being a felony assistant who's been in the office for some time. So is it the prosecutor's office in all of those cases need to come in, bring in outside counsel to prosecute these cases or bring in another State's Attorney's Office? Wouldn't that be cumbersome or burdensome? And isn't the prosecutor's office there to represent everyone? Certainly the prosecutor's office is there to represent everyone. They represent the people. The captions are always, cases are always captioned, the people against so-and-so. But the reason a prosecutor needs to disqualify himself, according to the statute, when he has a personal, when there's a personal interest. And the personal interest here, well, say, it's about as appropriate for the prosecutor, for the State's Attorney's Office to be prosecuting these cases. It would have been for Judge Faywell to have presided at the trial. By. Well, that's kind of a stretch, isn't it? Well, maybe it's a bit of hyperbole, but. It's just a bit. Okay. I'm glad you admit it. But really, this was probably upsetting to the entire office. And the actual conduct of the State's Attorney's Office in this case, I think, shows exactly why. Well, how do you distinguish the Morley case? Where it was an employee. It was not a, it was not a, such, such an integral part of the employee. It wasn't such an integral part of the State's Attorney's Office as a senior, as a senior prosecutor who had daily collegial interaction with the attorneys who were actually standing up and prosecuting this case. And making the kind of discretionary decisions that prosecutors make in every case, whether to offer a plea agreement, whether to ask for the harshest possible sentence, or something else, or what to do, how to handle the case. And here, they did ask for the harshest possible sentence. Here, they issued numerous press releases, which is important, because the purpose of disqualification, or recusal of judges in general, is not because we're necessarily worried about what they're going to do, but we're worried especially about the appearance to the public. So, do you think a prosecutor from another county would have asked for any different of sentence? I don't know. The State's, the point is that it appears. And it didn't need to be a prosecutor from another county. It could have been the AG's office. It could have been somehow. They do this. There are means of doing this. But the point is, looking at it from the outside, from people reading these press releases, they see the prosecutor's office is going after somebody who tried to kill one of their own, or who was trying to hire somebody to kill one of their own. And you have to wonder, is this an interest? And the legislature has recognized that when a prosecutor has a personal interest in a case, then just like anyone who has a personal, any attorney or judge who has a personal interest in a case, he's not necessarily representing the people. He's representing himself. If I might, I hope I have a moment to address a couple of the points that they said. If your honors have other questions on this, of course, I'm here. Go ahead. My colleague here said that no one lied to Judge Creswell. Actually, Judge McAuliffe says, and this is on page, in the appendix to my brief, Judge McAuliffe's memorandum opinion on page 813. He says, the petition alleged that the defendant has been charged with DUI and is brought to court, quote, for status on return of vehicle. This is Judge McAuliffe's words. In truth, no prosecution was pending against the defendant for DUI. He had already been sentenced. And nothing was pending regarding return of vehicle on which a forfeiture proceeding had already occurred. Judge McAuliffe said, or found, the defendant made no request to attend court on any such status. The affidavit that the assistant state's attorney signed, swore to, said that he needs, that Van Der Ark needs to be brought, and says, quote, in order to prosecute said individual in this court, it is necessary to obtain an order of habeas corpus ad prosequendum to bring said individual before this court. It said he is brought before this court for status on return of vehicle. This was sworn to, this was under oath, presented to Judge Creswell. Judge McAuliffe found that Judge Creswell was not in on the deception and found that it would have been worse if she had been, but she wasn't. This is directly false. What did Judge Creswell's affidavit say? Judge Creswell's affidavit acknowledged that she knew they were going to question him while he was here. Fine. But it didn't say they were bringing him here for the purpose of questioning him. If there's a legitimate purpose to bring him there. Now, a question was raised about could he have been brought here under the Habeas Corpus Act for this purpose. It doesn't really matter. Judge McAuliffe says he thought that Judge Creswell was wrong on the law on that, but it doesn't matter. Judge Creswell may have made an error, may have made a legal error, but that's not what's under appeal here. Judge Creswell made the decision that she did, right or wrong, based on false statements by the state's attorney's office. What about the line of cases that talks about special circumstances with respect to writs? Help me out, Your Honor. Counsel talked about, you know, sometimes we relax the rules and regulations around issuing a writ if there are special circumstances. Right. And so here's my, here's really my inquiry. You have a confidential informant in the same facility where the would-be defendant is. They send a writ down saying, we want to interrogate him on a solicitation for murder, murder for hire. Doesn't that create the same problems as if, as though the people from the state's attorney's office, police, whoever, went to Santorini to talk to the confidential informant? So my question to you is, isn't this one of those types of special circumstances where you don't put on the face of the writ exactly why we want to talk to a confidential informant? A couple of points. One, the state's attorney's, people from the state's attorney's office did go to Centralia to put the wire on Myers. But that's completely beside the point. The judge, if they had asked the judge, if they had presented this to the judge in that way, we would have a different case than we do. They didn't do that. Instead, they just lied to the judge. Now, maybe this was a good idea. Maybe it was a good idea. But do attorneys get to decide, what I want is so important that it's okay for me to go ahead and lie to the court? That's really what's at stake here. And that's why, as Your Honor asked before, why suppression would be a remedy. Deterring this kind of conduct is so fundamental and important to the functioning of our court system that the remedy of suppression, this is not the usual way that suppression is used, but it is a remedy in order to deter conduct that needs to be deterred. And this conduct is more fundamental than most of what we ever see over here. The courts cannot function. If lawyers feel free, if prosecutors feel free to deceive the court because they think it's a good idea. Maybe it is a good idea. Maybe not. But the role of the judge is to decide whether this is a good idea or not. It's not the executive's role, it's not the prosecutor, it's not a member of the bar's role to decide. That's what judges do. And when judges are deceived in order to get them to do something that a litigant wants them to do, our whole court system is at risk. We just can't function like that. And that's why suppression is necessary here. It's necessary to deter that. And because if there's an affirmance in this case, if it's not suppressed, then the opposite happens. It's encouraged. This court will have decided, by affirming this decision, this court will have decided that lying to a court when there's a good reason for it is okay. And the judge can be cut out of the loop, cut out of the decision loop. If the judge decides it's a good idea, that's one thing. But when the prosecutor decides, I'm telling you this is a good idea and the judge needs to be deceived, we have a huge problem. Our court cannot function like that. And, therefore, this needs to be reversed, sent back, for one reason, for the inappropriate prosecutor, and, two, unremand these statements that were the direct fruit of lying to the judge, need to be suppressed in order to deter that conduct in the future and not to encourage it. Thank you. Folks, thank you very much for your wonderful arguments today. We appreciate your time. A decision will be rendered in due course.